### JIMMY RAY LOVE V. STATE

No. 28,987. May 15, 1957.
Appellant's Motion for Rehearing Overruled
(Without Written Opinion) June 19, 1957.

*Charlye O. Farris,* Wichita Falls, for appellant.

*Jack E. Hightower,* District Attorney, Vernon, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is murder; the punishment, 25 years.

The grounds advanced for reversal of the conviction are all based upon the claimed insufficiency of the evidence.

The deceased, Willie Carter, died as the result of being struck on the head with a bone. The evidence conclusively shows that appellant struck the blow.

The charge of the court submitted to the jury murder with malice, murder without malice and aggravated assault by the

use of a deadly weapon, and there appear to have been no exceptions to the charge and no charges requested.

The jury having found appellant guilty of murder with malice, we are to pass upon whether the evidence, viewed in the light most favorable to the verdict, is sufficient to sustain it.

We review the evidence in the light, also, of appellant's contentions that the evidence is insufficient to establish that the killing was voluntary, and to show that appellant had the specific intent to kill.

The Quanah Cotton Oil Company gave or sponsored a picnic for its male employees on June 17, 1956, at Lake Pauline, which is some six miles from Quanah.

Appellant and W. B. Solomon came to the picnic together, and the deceased came in his car. They were all employees at the oil mill.

During the day Solomon borrowed the deceased's car and made a trip to town and back and after his return Solomon began fussing and teasing the deceased about not having sufficient gas and oil in the car.

The carrying on between Solomon and the deceased was described by the witnesses as being "friendly cursing," "rawhiding," "hurrahing;" "but they were talking about each other with, I will call them, very bad words. Of course it was in a joking manner, which they have always done ever since I have known them."

Another oil mill employee went to where Solomon and the deceased were and "stopped them from hurrahing * * * because it sounded so bad" and in about a minute, the appellant came and "picked up this bone."

W. B. Solomon, after describing the "friendly argument" and "teasing" with the deceased, testified that he and others were engaged in "a little old crap game" while the argument with the deceased was going on; that appellant came by and told him to get up — "he just caught me by the shoulder and pulled me up and I got up;" that appellant had a bone in his hand and they walked to where the deceased was standing:

"Q. Then what did he do? A. He hauled off and hit him.

"Q. Hit who? A. Willie.

Clovis Daniel, also an employee of the Quanah Cotton Oil Company, saw the blow struck and testified:

"Q. What happened then after Willie Carter was hit? A. He fell. * * *

"Q. Then after he fell, what did he do? A. He got up and ran.

"Q. About how far did he run? A. Oh, he came by me and staggered over some more wood, and he stumbled again, but he ran an awful good ways, I would say approximately 100 yards.

"Q. I will ask you whether or not you saw the boy that had hit him, following him? A. A little distance. * * *

"Q. I will ask you whether or not the boy that was chasing him stooped down and picked up anything else? A. Yeah, he picked up a shovel.

"Q. After he picked up the shovel did he keep on chasing him? A. No, I think someone stopped him."

Daniel Randolph, who also worked at the oil mill, testified that he saw appellant strike the deceased with the bone, and heard the appellant say just as he hit him, "He ain't too God damn bad."

The witness Randolph testified that he went back the next day and got a bone which he identified as being that used by appellant. He testified that there were no marks on the bone and that it had remained at the scene over night and it was possible that it could have been another bone and that someone could have "switched bones." But the witness testified that he saw "a bunch of bones," the others being in a pile while this one had been moved and was lying where the assault occurred; and there were no "other bones anywhere around looking anything like this."

The sheriff testified that he had had possession of the bone brought to him by Randolph since the day of the killing and it was introduced and exhibited before the jury.

Randolph described the bone as probably a leg bone of a cow from "the low quarter of the leg."

The deceased was taken to Dr. Walter Brooks' clinic and then to the hospital. Dr. Brooks testified that from the fracture and injuries produced he would classify the blow received by the deceased as "a severe or heavy blow." The bone was exhibited to the doctor and he testified that such a bone could cause an injury such as he found on the head of the deceased and that the death of Willie Carter, which occurred at the hospital about 11 A.M. the day following the assault, was the direct result of the blow received by him on the head.

Dr. Brooks described the scalp laceration, the linear curve type skull fracture, the massive hemorrhage or blood clot between the brain and the skull, and the brain concussion, all produced by the blow on the head of the deceased. He also testified as to the efforts made to relieve the pressure and to save the life of the deceased by surgery.

Appellant did not offer any defense; did not testify and offered no witnesses in his behalf.

We find the evidence sufficient to sustain the jury's finding that appellant voluntarily and with malice aforethought killed Willie Carter by striking him on the head with a bone, as charged in the indictment.

No reversible error appearing, the judgment is affirmed.